## CURRAN v. WILLIAMS.

1. EQUITY—JURISDICTION—INTERPLEADER—MULTIPLICITY OF SUITS.
   A court of equity which has assumed jurisdiction of a suit initiated by bill of interpleader will hear and dispose of the whole matter to avoid multiplicity of suits.

2. INTERPLEADER—ADJUDICATION OF RIGHTS OF ALL PARTIES AT ONCE.
   If the bill of interpleader is ripe for decision at the time of hearing, the court may proceed at once to render a final decree settling the rights of all parties.

3. SAME—RECOVERY BY A DEFENDANT.
   Recovery by a defendant in a suit commenced by a bill of interpleader rests upon the strength of the claim of such defendant rather than upon the weakness of the other defendant.

4. SAME—JURY—COMPLETE EQUITY.
   The court in a suit commenced by a bill of interpleader, in determining the rights of the claimants, may do complete equity between them and generally see to it that no just right or privilege of trial is lost to either party as a result of having been compelled to litigate in a court of equity, there being no absolute right to a trial by jury.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur, Equity § 77 *et seq.*
    30 Am Jur, Interpleader § 26.
[2–4] 30 Am Jur, Interpleader § 27.
[5] 15 Am Jur, Damages §§ 240, 249.
[6, 7] 15 Am Jur, Damages §§ 242–244.

5. CONTRACTS—STIPULATION AS TO DAMAGES FOR BREACH.

The parties to a contract can stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement, such stipulation being enforceable if the damages from a breach are uncertain and difficult to ascertain at the time the contract is executed and the amount stipulated is reasonable with relation to the possible injury suffered.

6. SAME—LIQUIDATED DAMAGES.

A provision for liquidated damages for breach of contract will be regarded as enforceable, and not as a penalty, where it embraces the principle of just compensation for the loss or injury actually sustained.

7. SAME—FORFEITURE OF DEPOSIT—LIQUIDATED DAMAGES.

Forfeiture to seller of $1,000 deposit on purchase price of theater property at $59,000, as liquidated damages for purchaser's failure to complete the purchase of the property within time indicated *held*, a valid stipulation of liquidated damages.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 15, 1958. (Docket No. 24, Calendar No. 45,781.) Decided April 14, 1958.

Bill of interpleader by George F. Curran to determine ownership of funds on deposit as earnest money in connection with proposed sale of theater by Lawrence M. Williams and Rufina A. Williams to Julius Pavella. Cross bill by defendants Williams, claiming damages in excess of deposit, dismissed on motion. Defendants Williams appeal. Affirmed.

*O'Leary & O'Leary* for defendants Williams.

*Benjamin W. Grant,* for defendant Pavella.

KAVANAGH, J. Plaintiff George F. Curran was both lawyer and real-estate broker in the proposed sale of a theater in Almont, Michigan, which gave rise to this litigation. The proposed purchaser of the theater signed a purchase agreement in the sum

of $59,000, dated June 4, 1951, and paid a $1,000 deposit to Curran. The sellers, Lawrence M. Williams and Rufina A. Williams, accepted the purchase agreement, but the transaction was never completed.

Both sellers and purchaser claimed the breach of contract was committed by the opposite party, and both demanded the deposit from Curran.

At this point Curran filed a bill in equity interpleading both the proposed sellers and the proposed purchaser as defendants. Curran disclaimed any interest in the $1,000 and deposited same with the clerk of the court, asking the court to determine to whom the money should be paid.

As between the interpleaded defendants, the crucial sections of the contract were section 6 and section 10:

"6. As evidence of title, seller agrees to furnish purchaser, as soon as possible, a complete abstract of title and tax history, certified to a date later than the acceptance hereof, and issued by the Burton Abstract & Title Company. In lieu thereof, a policy of title insurance issued by said company, bearing date later than the acceptance hereof, and guaranteeing the title in the condition required for performance of this order, will be accepted."

"10. In consideration of the broker's effort to obtain the seller's approval, it is understood that this offer is irrevocable for . . . days from the date hereof, and if not accepted by the owner within that time, the deposit shall be returned forthwith to the purchaser. If the offer is accepted by the seller, the purchaser agrees to complete the purchase of said property within the time indicated in paragraph 7, or forfeit to the seller the deposit made herein as liquidated damages."

It is Pavella's claim that the Williams were never able to offer marketable title or title policy under section 6 since they had only a vendees' interest under

a land contract upon which forfeiture proceedings had been started and a judgment of restitution had been entered 1 month prior to the instant purchase agreement.

It is the Williams' claim that Pavella never went through with his agreement to purchase, and, hence, forfeited the $1,000 to them under section 10.

Appellants Williams also, however, filed a cross bill of complaint alleging that appellee Pavella's failure to go through with the deal had occasioned their losing the property, and seeking damages in the sum of $7,334.92 over and above the deposit.

Appellee moved to dismiss this cross bill, claiming that the contract (section 10) specifically limited damages to the sum of $1,000. The lower court granted the motion to dismiss without prejudice to appellants filing an amended cross bill limiting their claim to $1,000.

Appellants claim that since interpleader is an equity action, they may be heard on their total damage claim even if the cause originated as an action to determine title to the $1,000 deposit. They further assert that the dismissal of their cross bill would render their claim *res judicata* and that in any event the whole matter should be heard in 1 action to avoid multiplicity of suits.

As to the general view of the powers of an equity court to hear and dispose of issues between parties once it has assumed jurisdiction, we agree with appellants.

"After it is determined that the plaintiff in interpleader has the right to bring the action and to compel the defendants or claimants to interplead, and after the plaintiff is discharged from liability, with his costs, upon bringing the money or thing in dispute into court, the litigation proceeds among the claimants or defendants. If the bill of interpleader is ripe for decision at the time of hearing, the court ordi-

narily will proceed at once to render a final decree settling the rights of all parties at once. On the other hand, if the case is not ripe for decision, the court, upon dismissing the plaintiff, will direct an action or an issue or a reference to a master, as may be best suited to the nature of the case. As between the defendants compelled to interplead, recovery rests upon the strength of the claim of one, rather than upon the weakness of the other.

"The court, in determining the rights of the claimants, may do complete equity between them and, generally, see to it that no just right or privilege of trial is lost to either party as a result of having been compelled by bill of interpleader to litigate in a court of equity. However, inasmuch as the basis of an interpleader action is equitable, there is no absolute right to a trial by jury." 30 Am Jur (Rev), Interpleader, § 27, p 503.

In the instant proceeding, however, appellants found their claim for damages entirely upon the purchase agreement. Section 10 thereof clearly stipulates:

"The purchaser agrees to complete the purchase of said property within the time indicated in paragraph 7, or forfeit to the seller the deposit made herein as liquidated damages."

It is a well-settled rule in this State that the parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. Such a stipulation is enforceable, particularly where the damages which would result from a breach are uncertain and difficult to ascertain at time contract is executed. If the amount stipulated is reasonable with relation to the possible injury suffered, the courts will sustain such a stipulation.

The purpose in permitting a stipulation of damages as compensation is to render certain and definite that which appears to be uncertain and not easily proven. The courts recognize that the parties, particularly at the time of execution of the instrument, are in as good a position as anyone to arrive at a fair amount of damages for a subsequent breach. In the event they are not unconscionable or excessive courts will not disturb it. Just compensation for the injuries sustained is the principle at which the law attempts to arrive. Courts will not permit parties to stipulate unreasonable sums as damages, and where such an attempt is made have held them penalties and therefore void and unenforceable.

We believe that the law in Michigan with reference to liquidated damages has been very clearly and fairly presented from the early case of *Jaquith* v. *Hudson,* 5 Mich 123 . Justice CHRISTIANCY, speaking for the Court, in that case said (pp 133–135, 137, 138) :

"The law, following the dictates of equity and natural justice, in cases of this kind, adopts, the *principle of just compensation* for the *loss* or *injury actually sustained;* considering it no greater violation of this principle to confine the injured party to the recovery of *less,* than to enable him, by the aid of the court to extort *more.* It is the application, in a court of law, of that principle long recognized in courts of equity, which, disregarding the penalty of the bond, gives *only* the *damages actually sustained.* This principle may be stated, in other words, to be, that courts of justice will not recognize or enforce a contract, or any stipulation of a contract, clearly unjust and unconscionable;—a principle of common sense and common honesty so obviously in accordance with the dictates of justice and sound policy, as to make it rather matter of surprise that courts of law had not always; and in all cases, adopted it to the same extent as courts of equity. And, happily

for the purposes of justice, the tendency of courts of law seems now to be towards the full recognition of the principle, in all cases.   *   *   *

"But the court will apply this principle, and disregard the express stipulation of parties, *only* in those cases where it is obvious from the contract before them, and the whole subject matter, that the principle of compensation has been disregarded, and that to carry out the express stipulation of the parties, would violate this principle, which alone the court recognizes as the law of the contract.

"The violation, or disregard of this principle of compensation, may appear to the court in various ways,—from the contract, the sum mentioned, and the subject matter.   Thus, where a large sum (say $1,000) is made payable solely in consequence of the nonpayment of a much smaller sum (say $100), at a certain day; or where the contract is for the performance of several stipulations of very different degrees of importance, and one large sum is made payable on the breach of any one of them, even the most trivial, the damages for which can, in no reasonable probability, amount to that sum; in the first case, the Court must see that the real damage is readily computed, and that the principle of compensation has been overlooked, or purposely disregarded; in the second case, though there may be more difficulty in ascertaining the precise amount of damage, yet, as the contract exacts the same large sum for the breach of a trivial or comparatively unimportant stipulation, as for that of the *most* important, or of *all of them together,* it is equally clear that the parties have wholly departed from the idea of just compensation, and attempted to fix a rule of damages which the law will not recognize or enforce.

"We do not mean to say that the principle above stated as deducible from the cases, is to be found generally announced in express terms, in the language of the courts; but it will be found, we think, to be necessarily implied in, and to form the only rational foundation for, all that large class of cases

which have held the sum to be in the nature of a penalty, notwithstanding the strongest and most explicit declarations of the parties that it was intended as stipulated and ascertained damages.

"It is true, the courts in nearly all these cases profess to be construing the contract with reference to the intention of the parties, as if for the purpose of ascertaining and giving effect to that intention; yet it is obvious, from these cases, that wherever it has appeared to the court, from the face of the contract and the subject matter, that the sum was clearly too large for just compensation, here, while they will allow any form of words, even those expressing the direct contrary, to indicate the intent to make it a penalty, yet no form of words, no force of language, is competent to the expression of the opposite intent. Here, then, is an intention incapable of expression in words; and as all written contracts must be expressed in words, it would seem to be a mere waste of time and effort to look for such an intention in such a contract. And as the question is between 2 opposite intents only, and the *negation* of the one necessarily implies the *existence* of the *other,* there would seem to be no room left for construction with reference to the intent. It must, then, be manifest that the intention of the parties in such cases is not the governing consideration.  *  *  *

"There are great numbers of cases, where, from the nature of the contract and the subject matter of the stipulation, for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty, by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the peculiar circumstances, and therefore better able to compute the actual or probable damages, than courts or juries, from any evidence which can be brought before them. In all such cases, the law permits the parties to *ascertain* for themselves, and to provide in the contract·

itself, the amount of the damages which shall be paid for the breach. In permitting this, the law does not lose sight of the principle of compensation, which is the law of the contract, but merely adopts the computation or estimate of the damages made by the parties, as being the *best* and *most certain mode* of ascertaining the actual damage, or what sum will amount to a just compensation. The *reason,* therefore, for *allowing* the parties to ascertain for themselves the damages in this class of cases, is the *same* which *denies* the right in the former class of cases; *viz.,* the courts adopt the *best* and *most practicable* mode of *ascertaining* the sum which will produce *just compensation."*

The rule, as stated above, has repeatedly been recognized and applied in subsequent decisions in this Court, including *Ross* v. *Loescher,* 152 Mich 386; *Hall* v. *Gargaro,* 310 Mich 693; *Wilkinson* v. *Lanterman,* 314 Mich 568.

The facts in the *Wilkinson* v. *Lanterman Case, supra,* are almost identical with the facts in the instant case. Justice Carr, speaking for the Court, there held identical provisions for liquidated damages in the amount of $1,000 for a $50,000 sale price to be enforceable and reasonable.

To apply the rule of law to the facts in the instant case, it would appear that there would be no question that the sum was reasonable as to amount and, therefore, a valid stipulation for liquidated damages insofar as amount is concerned. We think that at the time of the execution of this agreement it would have been difficult to ascertain the damages the respective parties might suffer in the event of breach of the agreement. It would certainly not be possible to assume at that time that in the event the purchaser failed to go through with his contract that the seller might find someone else to buy at approximately the same price. Other factors with reference to the dam-

ages might be equally difficult to arrive at. Therefore, it would appear that the facts in the instant case, at the time of the execution of the agreement, were such that the damages were difficult to ascertain, and that the honest attempt of the parties themselves to compute the best they could the just compensation from loss by breach of the contract justified the liquidated damage provision. The parties themselves being more intimately associated with the circumstances and therefore better able to compute the actual or probable damages than might a court or jury after breach.

On the record before us we think the trial court reached the correct conclusion in dismissing appellants' cross bill without prejudice to their filing one amended to conform to the contract damage clause.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.