89 F.3d 833
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EXAR CORPORATION, Plaintiff-Appellee/Cross-Appellant,
v.
NARTRON CORPORATION, Defendant-Appellant/Cross-Appellee.
 Nos. 94-2409, 94-2452.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1996.
 
 BEFORE: MARTIN and SILER, Circuit Judges; and HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 This is the appeal and cross-appeal of a judgment entered in a breach of contract action between Exar Corporation and Nartron Corporation. We have jurisdiction because the parties are residents of different states. The primary issue on appeal is Nartron's challenge of the district court's conclusion that the contract liquidated damage provision was enforceable. Because we believe that the liquidated damages were reasonable in light of anticipated circumstances, we will affirm.
 
 
 2
 * Exar and Nartron executed a contract for the development of a custom integrated circuit. Exar agreed to develop the circuit and deliver prototypes to Nartron. In exchange, Nartron agreed to purchase at least 50,000 units. Exar's October quotation stated that half of its $49,000 in development costs was to be paid prior to beginning the work. The balance was due upon delivery of the prototypes. Nartron sent a check for $24,500 with its order.
 
 
 3
 Nartron's January order accepted a design change option which added $2,000 in development costs. Nartron sent a $1,000 check for its half initial payment. Exar's October quotation stated that each unit would cost $2.08 ($104,000 for 50,000 units). With the design change, the costs of each unit became $2.36 ($118,000 for 50,000 units).
 
 Exar's October quotation stated:
 
 4
 In the event that this project is canceled at any stage of design or during production, through no fault of EXAR, then Nartron is liable for cancellation charges based on the following formula:
 
 
 5
 2 x Total NRE X[1 - N1/N2]
 
 Where N1 = quantity of devices shipped
 N2 = quantity ordered or committed to order
 
 6
 It is the validity of this liquidated damage provision which the parties now dispute.
 
 
 7
 After the delivery of some prototypes, the parties fell into a dispute about Nartron's ability to deliver acceptable models over the remainder of the contract. Ultimately, Exar sued Nartron seeking $25,500 in compensatory damages for the unreimbursed nonrecurring engineering expenses and the $102,000 cancellation fee as calculated by the liquidated damages clause. Nartron counterclaimed alleging that Exar failed to deliver satisfactory prototypes.
 
 
 8
 After a two-day bench trial, the district court found that Nartron had breached the contract with Exar by failing to place a production quantity order after receipt of the conforming prototypes. Because of its breach, the district court held Nartron responsible for the cancellation fee of $102,000, subject to a $25,500 offset for the down payment Nartron had advanced on the price of the contract. The district court specifically found that the liquidated damage clause was not punitive, but rather was a reasonable and enforceable contract provision.
 
 
 9
 On appeal, the parties do not dispute the district court's findings that the parties had a contract, that Nartron accepted Exar's prototypes, and that Nartron canceled the contract through no fault of Exar. Both parties only appeal the district court's award of $76,500 in damages to Exar. Exar argues that the court properly awarded the company $102,000 in liquidated damages, but erred in subtracting Nartron's $25,500 advance payment from the award and in failing to award an additional $25,500 in compensatory damages. Nartron challenges the damages award on the ground that the contract's liquidated damage provision is an unenforceable penalty clause.
 
 II.
 
 10
 We must determine first whether the liquidated damages provision is enforceable. In making this determination we note that this court reverses a district court's factual findings only if they are clearly erroneous, but reviews questions of law, including contract interpretations, de novo. Boyer v. Douglas Components Corp., 986 F.2d 999, 1003 (6th Cir.1993).
 
 
 11
 Michigan law recognizes the ability of parties to a contract to determine reasonable liquidated damages in advance of any breach. It is a well-settled that "parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement." Moore v. St. Clair County, 328 N.W.2d 47, 49-50 (Mich.Ct.App.1982). Under the Michigan Uniform Commercial Code, M.C.L. §§ 440, 1101 et seq., parties to a contract may agree to a liquidated damages provision at an amount that is "reasonable in light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." M.C.L. § 440.2718(1). If the stipulated amount is "reasonable with relation to the possible injury suffered, the courts will sustain such a stipulation." Moore, 328 N.W.2d at 50. The reason for allowing liquidated damages provisions has been stated as follows:
 
 
 12
 The purpose in permitting a stipulation of damages as compensation is to render certain and definite that which appear to be uncertain and not easily proven. The courts recognize that the parties, particularly at the time of execution of the instrument, are in as good a position as anyone to arrive at a fair amount of damages for a subsequent breach. In the event they are not unconscionable or excessive courts will not disturb it.
 
 
 13
 Id. (citation omitted).
 
 
 14
 In this case, the parties agreed to a cancellation clause, which included a liquidated damages provision, incorporated in Exar's October 1988 quotation. On appeal, Nartron argues that Exar failed to provide evidence that the provision is reasonable in light of anticipated or actual damages and that, therefore, it is void as a penalty. We are not certain that Exar has the burden of now proving the contract provision reasonable. The provision appears reasonable and Nartron introduced no evidence that the liquidated damage provision was unreasonable or uninformed at the time made. The parties themselves were "more intimately associated with the circumstances and therefore better able to compute the actual or probable damages than ... a court or jury after breach." Curran v. Williams, 89 N.W.2d 602, 606 (Mich.1958). We agree with the district court's conclusion that this figure "is reasonable and not punitive in light of the anticipated lost opportunity of engineering charges that could have been devoted to projects resulting in production quantity orders." Consequently, we believe the district court correctly held that the cancellation fee is not punitive, but rather is a reasonable estimation of damages measured at the time of contract.
 
 III.
 
 15
 Next we must determine whether the district court erred in offsetting the liquidated damages award of $102,000 by the $25,500 advance payment by Nartron before Exar began development of the integrated circuit. Exar claims that it is entitled to separate awards of $102,000 for the cancellation fee and $25,500 for the second fifty percent of the nonrecurring engineering charges. We do not agree.
 
 
 16
 Michigan law recognizes that a liquidated damages clause is not necessarily the exclusive remedy available to an aggrieved seller. See M.C.L. § 440.2718(3)(a) (indicating that a seller has the right to recover damages under the U.C.C. other than those provided for in the liquidated damages provision). In addition, a remedy for a breach of contract is not exclusive unless the parties expressly define it as such. See M.C.L. § 440.2719(1)(b) (stating that "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy"). Although a seller may be entitled to remedies in addition to liquidated damages, "Michigan law proscribes double recovery for the same injury." Chicilo v. Marshall, 460 N.W.2d 231, 232 (Mich.Ct.App.1990). To determine "whether a double recovery has occurred, we must determine what injury is sought to be compensated." Id.
 
 
 17
 In this case, the parties did not expressly agree to have the cancellation provision serve as the exclusive remedy in the event of breach. Nevertheless, its purpose was to compensate Exar in the event Nartron breached the contract, to a certain extent, for the engineering resources ... spent in the development of [the] integrated circuit," and for "lost opportunity." The $51,000 prototype payment required of Nartron, one-half of which it paid, covered Exar's nonrecurring engineering charges for design and development of the prototypes. The district court reduced the cancellation fee by $25,500 to account for Nartron's advance payment of one-half of Exar's nonrecurring engineering charges. Because both the $51,000 development costs payment and the cancellation fee were intended to compensate Exar for its nonrecurring engineering costs, we believe the district court acted properly.
 
 
 18
 We AFFIRM the District Court in all respects.
 
 
 
 *
 The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation