OPINION
Plaintiff-appellant-cross appellee Stephen Development Co. appeals the November 16, 1999, December 7, 1999, and January 26, 2000, Judgment Entries of the Stark County Court of Common Pleas granting defendant-appellee-cross-appellant Farm Bureau Life Insurance Company's Motion for Summary Judgment and awarding damages in favor of appellee and denying appellant's Motion for Summary Judgment.
 STATEMENT OF THE FACTS AND CASE
In June, 1998, the parties, Stephen Development Co. and Farm Bureau Life Insurance Company, entered into a written loan commitment agreement (hereinafter Commitment) wherein Farm Bureau Life Insurance Co. would loan Stephen Development Co. the lesser of $1,600,000.00 or 75% of the appraised value of the real estate to which the loan pertained. The Commitment required Stephen Development Co. to pay to Farm Bureau Life Insurance Company a "stand-by deposit" in the amount of $32,000.00, due shortly after the Commitment was signed. The loan was originally scheduled to close on August 19, 1998. The Commitment contained a number of requirements that had to occur prior to the closing, including the submission of certain documents. These requirements were contained in the schedules and addenda attached to the Commitment. The Farm Bureau Life Insurance Company of Michigan [hereinafter Farm Bureau] did not receive all of the required documents from Stephen Development Co. Farm Bureau sent Stephen Development Co. [hereinafter Stephen Development] a letter dated August 14, 1998, which indicated that Farm Bureau had not received some of the requested documents and stated that the closing date would be extended to September 2, 1998. The September 2, 1998, closing date passed, Farm Bureau did not receive all required documents, and the loan did not close. After the closing date, Farm Bureau sent a facsimile to Stephen Development itemizing the documents that Farm Bureau still required. On October 28, 1998, Farm Bureau sent Stephen Development a letter stating "this is to advise you that Farm Bureau's Commitment dated June 8, 1998, has expired according to its terms and conditions." On or around November 13, 1998, Stephen Development sent a written demand to Farm Bureau requesting that Farm Bureau return Stephen Development's $32,000.00 stand-by deposit. Farm Bureau responded in writing claiming that it was entitled to keep the $32,000.00 as an earned Commitment fee "per the terms of the Commitment." On March 16, 1999, Stephen Development filed a complaint for breach of contract and unjust enrichment against Farm Bureau. After expedited discovery, the parties filed cross motions for Summary Judgment on the issue of liability and enforceability of a liquidated damage clause. By Judgment Entry of September 23, 1999, the trial court overruled Stephen Development's Motion for Summary Judgment and sustained Farm Bureau's Motion for Summary Judgment, in part. The trial court held that Farm Bureau had not breached the contract by refusing to return Stephen Development's deposit, but ordered a hearing to determine whether Farm Bureau had sustained any actual damages as a result of the parties' transaction failing to close. Ostensibly, this hearing was for the purpose of determining the validity of the liquidated damages clause in the contract. The trial court referred the hearing to a Magistrate and a record hearing was held on October 28, 1999. On November 16, 1999, the Magistrate issued a ruling, which was signed by the trial court, ordering Farm Bureau to return $13,315.00 of the original $32,000.00 deposit to Stephen Development. Stephen Development filed a timely request for Findings of Fact and Conclusions of Law. The Magistrate issued the requested Findings and Conclusions on December 7, 1999, which were also signed by the trial court. Thereafter, the parties filed objections to the Magistrate's Decision. By Judgment Entry filed January 26, 2000, the trial court overruled both parties' objections and adopted the Magistrate's Decision in its entirety. Stephen Development filed a timely Notice of Appeal. Farm Bureau filed a timely Notice of Cross Appeal. The parties set forth the following assignments of error:
ASSIGNMENT OF ERROR I
 `THE TRIAL COURT ERRED BY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART, BY HOLDING THAT DEFENDANT DID NOT BREACH THE PARTIES' CONTRACT BY FAILING TO RETURN PLAINTIFF'S $32,000.00 DEPOSIT.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED BY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART, BY HOLDING THAT THE LIQUIDATED DAMAGE PROVISION IN THE PARTIES' CONTRACT WAS NOT UNENFORCIBLE AS AGAINST PUBLIC POLICY.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED BY ALLOWING DEFENDANT TO RETAIN $2,350.00 OF PLAINTIFF'S $32,000.00 DEPOSIT AS DAMAGES FOR THE LEGAL EXPENSES WHEN THE ONLY EVIDENCE OFFERED IN SUPPORT OF THIS ELEMENT OF DAMAGE WAS IMPROPERLY ADMITTED HEARSAY ELICITED FROM A WITNESS WHO LACKED PERSONAL KNOWLEDGE.
ASSIGNMENT OF ERROR IV
 THE TRIAL COURT ERRED BY ALLOWING DEFENDANT TO RETAIN $4,252.00 OF PLAINTIFF'S $32,000.00 DEPOSIT AS DAMAGES FOR STAFF TIME AND OVERHEAD EXPENSES WHEN THE EVIDENCE OFFERED IN SUPPORT OF THIS ELEMENT OF DAMAGE WAS IMPROPERLY ADMITTED HEARSAY ELICITED FROM A WITNESS WHO LACKED PERSONAL KNOWLEDGE, AND WHEN THE WITNESS TESTIFIED ON THE BASIS OF REPORTS PREPARED FOR THE PURPOSE OF LITIGATION THAT WERE NOT INTRODUCED INTO EVIDENCE.
ASSIGNMENT OF ERROR V
 THE TRIAL COURT ERRED BY ALLOWING DEFENDANT TO RETAIN $12,082.94 OF PLAINTIFF'S $32,000.00 DEPOSIT AS DAMAGES FOR SHORT-TERM INTEREST LOSS WHEN THE ONLY EVIDENCE OFFERED IN SUPPORT OF THIS ELEMENT OF DAMAGE WAS IMPROPERLY ADMITTED HEARSAY ELICITED FROM A WITNESS WHO LACKED PERSONAL KNOWLEDGE.
CROSS APPEAL
ASSIGNMENT OF ERROR I
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW BY FAILING TO APPLY MICHIGAN LAW IN INTERPRETING THE LIQUIDATED DAMAGES PROVISION IN THE LOAN COMMITMENT.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO AWARD FARM BUREAU ITS LONG-TERM INTEREST LOSS.
The trial court, in the case sub judice, granted summary judgment in favor of Farm Bureau, finding that there was no genuine issue of material fact. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
It is based upon this standard that we review the assignments of error which are presented pursuant to the trial court's grant of summary judgment.
 Cross Appeal I
We will first address assignment of error I from Farm Bureau's cross-appeal. In that assignment of error, Farm Bureau argues that the trial court incorrectly applied the laws of the State of Ohio rather than the laws of the State of Michigan and that Farm Bureau was entitled to retain the full $32,000 in liquidated damages under Michigan law. We agree. The determination of which state's law to apply, pursuant to an express choice of law provision in a contract, is made as a matter of law by the trial court. Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Company (1983), 6 Ohio St.3d 436, para. one of syllabus. When determining a question of law, this court may substitute its judgment for that of the trial court without deference under the de novo standard of review. Castlebrook Ltd. v. Dayton Properties Ltd. Partnership (1992), 78 Ohio App.3d 340, 346. Therefore, this court may address the issue as to which state's law should be applied to the contract sub judice de novo. The contract clearly states that the laws of Michigan shall be applied to the contract. A review of the trial court's Judgment Entry reveals that, while the trial court did not specifically address the issue of the choice of law clause, the trial court applied Ohio law to the contract. Only Ohio case law is cited and there are no references to Michigan law. When the parties to a contract have specifically designated that the law of a certain state shall be applied, that state's law shall be applied ". . . unless [1] either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [2] application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." Schulke Radio Productions, Ltd., supra at para. one of the syllabus. However, in Jarvis v. Ashland Oil, Inc. (1985), 17 Ohio St.3d 189,478 N.E.2d 786, the Court held that where parties to a contract made an effective choice of law, the second prong of the Schulke test will not be applied to contravene the choice of the parties as to the applicable law. More recently, the Ohio Supreme Court has stated that even if the "law of the chosen state is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of a particular issue." Id. In the case sub judice, the parties made an effective choice of law. Further, Michigan has a substantial relationship to the parties and the transaction since the Commitment was made in Michigan by a Michigan company and was to be performed in Michigan by Farm Bureau. Lastly, we find that Ohio does not have a materially greater interest than Michigan in the determination of the particular issues in this case and that Michigan law on the issue of liquidated damages is not contrary to any "fundamental" policy of Ohio. Therefore, we find that the trial court erred when it failed to apply the laws of Michigan to the alleged breach of the Commitment between the parties. Farm Bureau further argues that, under Michigan law, the $32,000 liquidated damages clause is valid and enforceable. The Michigan Supreme Court has held that an agreement with respect to the amount to be paid as compensation for loss or injury which may result in the event of a breach is enforceable as a matter of contract, particularly where the amount of damages that would result from the breach is uncertain and difficult to ascertain at the time of contract formation and the stipulated amount is reasonable. Curran v. Williams (1958), 352 Mich. 278, 282, 89 N.W.2d 602, 604. The Michigan Supreme Court in Curran held as follows: It is a well-settled rule in this state that the parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of the breach of the agreement. Such a stipulation is enforceable, particularly where the damages which would result from a breach are uncertain and difficult to ascertain at the time the contract is executed. If the amount stipulated is reasonable with relation to the possible injury suffered, the courts will sustain such a stipulation.
The purpose in permitting a stipulation of damages as compensation is to render certain and definite that which appears to be uncertain and not easily proven. The courts recognize that the parties, particularly at the time of execution of the instrument, are in as good a position as anyone to arrive at a fair amount of damages for a subsequent breach.
Curran, 352 Mich. at 282-283.
In the situation where damages are unascertainable or difficult to ascertain at the time a contract is executed, Michigan courts "[adopt] the computation or estimate of the damages made by the parties, as being the best and most certain mode of ascertaining the actual damage, or what sum will amount to a just compensation." Id. at 286. When two parties stand in "relatively equal bargaining position" when they enter into a contract, it will be assumed that the parties considered their determination to forfeit the amount of a deposit as liquidated damages in the event the contract is not completed to be a fair amount. Worley v. McCarty (1958), 354 Mich. 599, 605, 93 N.W.2d 269, 272. Thus, Michigan courts have applied a "reasonableness" test when reviewing liquidated damages clauses in order to determine whether a fee constitutes permissible liquidated damages or an unenforceable penalty. See Hall v. Gargaro (1945), 310 Mich. 693, 17 N.W.2d 795. To determine whether the amount stipulated as liquidate damages is reasonable, [Michigan courts look] to conditions at the time the contract was entered into, not at the time of breach of the contract. . . ." Solomon v. Michigan Dept. of State Highways and Transportation (1984), 131 Mich. App. 479, 484,345 N.W.2d 717, 719. First, we find that, at the time the parties entered into the Commitment, damages for a breach by Stephen Development were uncertain and not capable of calculation. In particular, a breach of the Commitment would result in a loss of opportunity to Farm Bureau to loan or invest the money elsewhere. The extent of such a loss was incalculable and not predictable at the time the Commitment was entered. Loss of opportunity damages are tied to financial markets, interest rate variations and other lending or investment opportunities. Such damages could not have been calculated or determined at that point in time. Further, this Commitment was for loan of $1,600,000.00. We find that a liquidated damage clause of $32,000.00 was not unreasonable. This is especially true since, in the hearing on damages, Farm Bureau presented "evidence" of damages amounting to $35,573.94. Lastly we note that Michigan law assumes that a liquidated damage clause in a contract entered into between two parties in relatively equal bargaining positions, was considered by the parties in their determination to forfeit the amount of a deposit as liquidated damages in the case of a breach to be a fair amount. Worley, supra. Both of the parties are businesses and were involved in a real estate transaction involving $1,600,000.00. We find that these parties were in relatively equal bargaining positions. Therefore, we find that the liquidated damage clause was not a punishment as against public policy and was enforceable. Further, we find the trial court erred when it failed to enforce the clause and award $32,000.00 in favor of Farm Bureau, and against Stephen Development, in accordance with the terms of the Commitment. Appellee's-cross appellant's first assignment of error on cross appeal is sustained.
 I
We will now address Stephen Development's first assignment of error on appeal as to whether Farm Bureau breached the terms of the Commitment. Stephen Development argues that the stand-by deposit never matured into an "earned Commitment fee" and Farm Bureau never acted to terminate the Commitment so as to justify Farm Bureau's retention of Stephen Development's deposit. We disagree. In denying Stephen Development's Motion for Summary Judgment, the trial court implicitly found that Farm Bureau did not breach the terms of the Commitment when it failed to return the $32,000.00 stand-by deposit. Further, the trial court implicitly found that Stephen Development breached the terms of the Commitment in such a way that terminated the Commitment, entitling Farm Bureau to an award of damages. The trial court held as follows: The Commitment provided for forfeiture of the stand-by deposit in the event that the Commitment terminated pursuant to one of the conditions as provided in the paragraph entitled Termination of Commitment: Lender shall be entitled to retain the full amount of the stand-by deposit as an earned Commitment fee in the event that this Commitment is terminated pursuant to paragraph titled Termination of Commitment. Although Plaintiff responded otherwise in the discovery requests, the correspondence establishes that Plaintiff did not provide the documents required to close the loan. In fact, Defendant faxed a request listing the outstanding documentation to the Plaintiff on September 24, 1998. In its brief, Plaintiff concedes that the failure to provide documents pursuant to section (vii) of Termination of Commitment is a possible basis for termination of the Commitment. At issue is the Defendant's entitlement to the full amount of the stand-by deposit as an earned Commitment fee as provided in the agreement. Plaintiff argues that this constitutes a punitive liquidated damages clause. The Commitment entered into by the parties sub judice stated the following: "Stand-by Deposit. Upon acceptance of this Commitment, Borrower(s) shall deposit with Lender the sum of $32,000 as a stand-by deposit as consideration for the issuance of this Commitment and to reimburse and make whole Lender for lost expenditures, effort and business opportunity in the event the Loan is not made due to the occurrence of any event described in the paragraph titled Termination of Commitment. No interest shall be paid on the stand-by deposit. The stand-by deposit shall be returned to Borrower(s), after deduction for the Loan fee required in this Commitment and any closing costs owed but not paid by Borrower(s) pursuant to the paragraph titled Closing Costs, and after the Borrower(s) has/have satisfied all requirements of the Commitment. Lender shall be entitled to retain the full amount of the stand-by deposit as an earned Commitment fee in the event that this Commitment is terminated pursuant to the paragraph titled Termination of Commitment. (Emphasis original.) . . . Termination of Commitment. This Commitment shall terminate and the Lender shall have no obligation to close the Loan or otherwise disburse the proceeds of the Loan if, in Lender's sole judgment," (Emphasis original.) (I) any of the foregoing requirements of this Commitment are not fulfilled within prescribed time periods, or (ii) any other term of this Commitment has not been satisfied within prescribed time periods, or (iii) any material adverse change in Borrower's(s') or its principal's(s') financial condition shall occur, or (iv) any other material adverse change shall occur in Borrower's(s') ability to observe or perform any obligation to the Lender under the Loan and the Loan documents, or (v) any of the representations or information supplied to Lender by Borrower's(s') were untrue, incomplete or misleading at the time supplied, or become untrue, incomplete or misleading at any time prior to the Disbursement Date, or (vi) any of the Security shall have suffered casualty due to fire or other cause, or (vii) Borrower(s) shall refuse or otherwise fail to timely provide or execute any document or certificate requested by Lender in connection with the Loan.
This Commitment shall terminate and the Lender shall have no further obligation hereunder if the Loan does not close by the Disbursement Date in accordance with the terms of this Commitment. Time is of the essence to the closing of the Loan." (Emphasis added.)
Commitment, page 3 — 4.
The Commitment included attachments, which required Stephen Development to submit certain documentation to Farm Bureau. In particular, Schedule I of the Commitment provided that Stephen Development provide "[c]ertified copies of partnership resolutions or certificates" and "[c]ertified copies of partnership agreements, recorded partnership certificates,. . . ." on or before July 22, 1998. Schedule I also called for Stephen Development to provide a "certified, detailed schedule of all personalty, fixtures, equipment . . . or other assets owned by the Borrower which were related to, or a part of the land and improvements" to Farm Bureau on or before August 5, 1998. Farm Bureau sent a facsimile to Stephen Development on September 24, 1998, which specifically listed these items and notified Stephen Development that these items had not been received. We find that, upon review, the record shows that these documents were not received by Farm Bureau. As outlined previously, the terms of the Commitment state that the "Commitment shall terminate" if Stephen Development fails to provide required documentation or information. Therefore, when Stephen Development failed to provide all of the required documentation by the agreed upon sale, the Commitment terminated. Stephen Development argues that, because the Commitment included language giving Farm Bureau the right to decide whether Stephen Development met the terms of the Commitment, then Farm Bureau had to act in order to terminate the Commitment. Thus, they conclude that because Farm Bureau did not actively make a decision to terminate the Commitment, the Commitment simply expired but was not "terminated", as that word is defined by the terms of the Commitment. We reject this argument. The terms of the Commitment are clear and unambiguous. While Farm Bureau had the discretion to waive deficiencies of Stephen Development, the Commitment stated that should Stephen Development fail to meet the requirements of the Commitment, the Commitment "shall" terminate. We find that Farm Bureau did not breach the contract because, under the terms of the Commitment, Farm Bureau had the right to keep the deposit upon termination of the Commitment. The Commitment contained the following liquidated damages clause: "Lender shall be entitled to retain the full amount of the stand-by deposit as an earned Commitment fee in the event that this Commitment is terminated pursuant to the paragraph titled Termination of Commitment. Commitment, page 3. Since we have found that the Commitment terminated pursuant to the paragraph titled Termination of Commitment, per the terms of the Commitment, Farm Bureau was entitled to retain the $32,000.00 stand-by deposit as an earned Commitment fee under the terms of the contract. Appellant's first assignment of error is overruled.
 II
Although the trial court failed to enforce the liquidated damages clause in the Commitment, the trial court did find that the liquidated damages clause was not unenforceable as against public policy. Stephen Development argues the deposit was designed to punish appellant and was unenforceable against public policy. We agree with the trial court that the clause was not against public policy and, upon a review under Michigan law, find that the liquidated damages clause contained in the Commitment is enforceable. (See previous discussion under cross appellant's first assignment of error). Appellant's second assignment of error is overruled.
 III, IV, V CROSS APPEAL II
In light of our holding above, we find that appellant's third, fourth and fifth assignments of error are moot as is cross appellant's second assignment of error, all of which deal with whether the amount of damages awarded by the trial court was correct. Our finding that the $32,000 liquidated damage clause was valid and enforceable against the appellant if appellant breached the contract and that appellant breached the contract, resolved the damages questions. CONCLUSION In conclusion, we overrule appellant's assignments of error I and II. We sustain appellee's-cross-appellant's assignment of error I and find that our holding as to appellee's-cross-appellant's assignment of error I renders appellant's assignments of error III, IV and V and appellee's-cross-appellant's assignment of error II moot.
The Judgment of the trial court is modified in that Judgment is hereby entered in favor of defendant-appellee-cross-appellant Farm Bureau Life Insurance Company of Michigan and against plaintiff-appellant-cross-appellee Stephen Development Co. in the amount of $32,000.00.
 _________________________ Edwards, J.
By Edwards, J. Gwin, P.J. and Reader, V.J. concurs