FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* CODY.

1. INTERPLEADER—ADMISSION OF LIABILITY—DISMISSAL OF BILL.

Claimants against surety on bonds of bankrupt securities broker, required under blue sky law, *held*, not entitled to dismissal of surety's bill in nature of bill of interpleader against them because controversy existed as to plaintiff's liability under the bonds where plaintiff admits its liability, under the respective bonds, to the full amount of their penalties (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

2. PRINCIPAL AND SURETY—SECURITIES BROKER'S BOND—LIABILITY OF SURETY—BLUE SKY LAW.

Liability of surety under bond given pursuant to blue sky law by securities broker is limited to the penal sum of the bond and claimants against surety are not each entitled to recover their respective losses, not to exceed such penal sum, on each claim under the bond (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

3. INTERPLEADER—EQUITY.

The remedy of interpleader is available only if defendants claim the same debt or thing, and if all adverse claims depend on or are derived from a common source and if plaintiff has no interest in or claim upon the subject-matter, and plaintiff has incurred no independent liability to either of the claimants.

4. SAME—SECURITIES BROKER'S SURETY.

Surety's bill in nature of bill of interpleader *held*, not dismissible as improper remedy where defendants all claim the penalty contained in bankrupt securities broker's statutory bonds, all claims are dependent or derived from the surety bonds as a common source, surety tendered full amount of penalties into court and surety has incurred no independent liability to a claimant (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

5. PLEADING—CURING DEFECTS.

Defect in bill in nature of bill of interpleader by surety on securities broker's bonds, consisting of failure to allege an excess of claims over amount of penal sums of bonds *held*, cured by filing of replication alleging such fact (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

6. INTERPLEADER—EXCESS OF CLAIMS OVER SURETY'S LIABILITY.

Requirement that, in seeking equitable relief by way of bill in nature of bill of interpleader, surety on statutory bonds of bankrupt securities broker show amount of claims against it in excess of penal sums of bonds prevents a surety from seeking equitable relief to prevent a single suit against it, permits *pro rata* distribution of fund when court of equity finds an excess of claims and preserves defrauded party right to sue at law where question of equitable distribution is not involved (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

7. LICENSES—PRINCIPAL AND SURETY—ACTION AT LAW AGAINST SURETY.

The right of a defrauded party to sue surety on statutory bond of securities broker in an action at law is a substantial right which is not to be abrogated or detracted from by suit for equitable relief unless question of . equity is clearly involved (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

8. INTERPLEADER—EQUITY—BROKERS—CLAIMS IN EXCESS OF SURETY BONDS.

Bill in nature of bill of interpleader by surety on statutory bonds of bankrupt securities broker *held*, to afford proper basis for exercise of equitable jurisdiction, where defendants' claims appear to be in excess of surety's total liability, in order to prevent an inequitable distribution (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

9. SAME—EQUITY—REMEDY—SURETY ON BROKER'S STATUTORY BOND.

Remedy of permitting surety on statutory bonds of bankrupt securities broker to maintain suit commenced by bill in nature of bill of interpleader, admitting and tendering total penal sum of bonds into court against numerous claimants having claims in excess of such sum, is conditioned upon deposit of the money in court and determination and equitable distribution of proven claims without contest or dispute by plaintiff, consideration by the court being given to character of respective claims, residence of claimants and other pertinent circumstances in its determination as to forum for proving claims (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted October 9, 1936. (Docket No. 60, Calendar No. 39,063.) Decided December 28, 1936. Rehearing denied March 2, 1937.

Bill in the nature of bill of interpleader by Fidelity & Deposit Company of Maryland, a Maryland corporation, against William J. Cody, Irwin D. Pike and others to determine validity of claims against statutory surety and for apportionment of sums due and other relief. From order denying motion to dismiss bill, defendant Pike and others appeal. Affirmed and remanded.

*Lightner, Crawford, Sweeny, Dodd & Toohy (Clifford M. Toohy* and *George D. Haller,* of counsel), for plaintiff.

*Rich, Munro & Willis* (Samuel S. Willis, of counsel), for defendant Pike and others.

TOY, J. Appellants, some 30 in number, appeal, by leave of this court, from an order entered by the circuit court denying their motion to dismiss plaintiff's bill of complaint.

Plaintiff filed its bill of complaint in the nature of interpleader, alleging that it was surety on two bonds, given by Norman Berry & Company, a stock brokerage concern of Detroit (now bankrupt), in the penal sum of $10,000 each; that the first bond was executed on April 13, 1935, and contained the following condition:

"Now, therefore, the condition of this obligation is such that if the said Norman Berry & Company and all salesmen registered by him shall faithfully comply with the provisions of Act No. 220, Pub. Acts 1923, as amended, then this obligation shall be void, otherwise the same shall be in full force and effect;"

that this bond expired June 30, 1935; that it executed a second bond on June 26, 1935, containing a provision like unto that contained in the first bond as

above quoted and in addition containing a further provision as follows:

"This bond is executed upon the following express condition, which is a condition precedent to any right of recovery hereunder:

" 'That nothing herein contained shall be construed to make the total maximum liability hereunder of the surety more than the penalty named in this bond, regardless of the number of acts of omission or commission of the above named principal and/or its salesmen, and regardless of the number of persons or corporations who may be injured by such acts of omission or commission;' "

that there are numerous claimants against plaintiff on one or the other of the bonds, exceeding the total penalty of the bonds; that each of defendants claims to have been defrauded by Norman Berry & Company or one of its salesmen in the course of their employment; that plaintiff "has no accurate information on which to form a belief as to the validity of the claims of said defendants and, therefore, invokes the aid of this court to first determine which claims, if any, are valid claims against it, as surety, and secondly, to apportion the benefits of each bond as far as said benefits will go to those who may be, by the court, found to be legally entitled to a proportionate amount of said bond penalty."

The bill further alleges that certain of the named defendants have commenced suit in different judicial circuits within the State, and that such claims, if found to be valid would "more than consume the entire penalty of said bonds and would, therefore, result in an inequitable division of said benefits." The bill further alleges that all of the other defendants (more than 100 of whom, according to the agreed statement of facts, have appeared in this action) are asserting their claims, and may, at any time, institute suit unless restrained therefrom by injunction. Paragraph 10 of the bill alleges:

"10. That plaintiff acknowledges that it executed said bonds, each having a penalty of $10,000 and that it may be liable on each of said bonds for certain sums to said defendants or to others who are not named herein because they are not known, but who, nevertheless, may have valid claims against said bond or bonds, and therefore, plaintiff makes a continuing tender of the amount of the penalty of each of said bonds to the court, subject to the limitation, however, that the court first find that those who may be paid any portion of the bond penalty of each of said bonds first establish to the satisfaction of the court and obtain an adjudication of the court that they, or some of them, individually, have a valid claim in definite amounts against said bond penalties and against said plaintiff because of having executed said bonds, as surety."

Plaintiff seeks by its bill to enjoin a multiplicity of suits at law and

"That the court determine or assign the matter to a circuit court commissioner for determination which of said defendants have valid claims against plaintiff on either of said bonds, and for determination of the correct amount of such claims if found to be valid, and that the court then apportion the amount of the penalty of each bond to those parties legally entitled to the same, providing, of course, there are more than $10,000 of valid claims arising during the period of each bond."

Appellants urge that plaintiff is not entitled to its bill in the nature of interpleader because a controversy exists as to the liability of plaintiff, contending that the plaintiff is liable to each of the defendants for their respective losses, not to exceed the sum of $10,000 on each claim under each bond. They cite as authority for their contention the case of *Maxim* v. *Shotwell,* 209 Mich. 79.

The difficulty with this contention is that plaintiff does not here seek to litigate its liability as was the case in *Maxim* v. *Shotwell.* Here the plaintiff admits its liability, under the respective bonds, to the full amount of their penalties. Appellants cannot, merely by raising the proposition of law as to the extent of liability, in a motion to dismiss, negative the allegation of admitted liability contained in the bill, unless such contention has sound legal foundation. This brings us to a consideration of the question of whether plaintiff, under such bonds, is liable to collective claimants for more than the penal amount named in the respective bonds. To so hold would, we think, extend the construction of the "blue sky" statute by virtue of which the bond is required (2 Comp. Laws 1929, § 9769 *et seq.**) far beyond the legislative intent. We find no decision of our court, construing this point in respect to a bond under the statute involved, but we believe the instant point is analogous to that involved in the so-called "saloon keeper's" bond, and which we construed in *Merrinane* v. *Miller,* 157 Mich. 279 (25 L. R. A. [N. S.] 585) and *Squires* v. *Miller,* 173 Mich. 304 (43 L. R. A. [N. S.] 76).

In the *Merrinane Case* we stated:

"It is urged in the brief of plaintiff that the penalty of the bond does not limit the liability, but that the sureties on the bond are liable to any amount by virtue of their relation to the principal, and that the liability is not limited by the penalty of the bond. We cannot assent to this view. We think the statute fixing the liability of the sureties must be read in connection with the provision requiring a bond and fixing the penalty thereof."

* This act amended by Acts Nos. 229, 255, Pub. Acts 1931, and Act No. 37, Pub. Acts 1935.

In the *Squires Case* we reaffirmed the above quoted language from the *Merrinane Case,* and stated further:

"The surety knows exactly what his limit of liability is and the risk he assumes. He simply obligates himself for a period of one year to pay all adjudicated fines and damages which the liquor dealer fails to pay, *up to the amount of the penalty stated in the bond.*" (Italics ours.)

This rule, which we adopted in the saloon keeper's bond cases, we think applies with equal force and logic to the "blue sky law" bond case before us. Such rule was so applied in *Witter* v. *Massachusetts Bonding & Ins. Co.,* 215 Iowa, 1322 (247 N. W. 831, 89 A. L. R. 1065) and *New Amsterdam Casualty Co.* v. *Hyde,* 148 Ore. 229 (34 Pac. [2d] 930, 35 Pac. [2d] 980). See, also, *Wiggins* v. *Pacific Indemnity Co.,* 134 Cal. App. 328 (25 Pac. [2d] 898); *Southern Surety Co.* v. *Bender,* 41 Ohio App. 541 (180 N. E. 198); *Guffanti* v. *National Surety Co.,* 196 N. Y. 452 (90 N. E. 174, 134 Am. St. Rep. 848); *Leggett* v. *Humphreys,* 21 How. (62 U. S.) 66.

Thus it appears that there is here no valid controversy over the liability of plaintiff to be litigated.

Appellants urge that a bill in the nature of interpleader is not the proper procedure; that the claims of appellants are not derived from a common source, but that the sources of such claims are the various fraudulent acts of Norman Berry & Company and its agents and that there are as many sources of these claims as there were such fraudulent acts. In their briefs they urge that the instant case is ruled by *Ford Motor Co.* v. *Wayne Circuit Judge,* 247 Mich. 538; *Lanning* v. *Stiles,* 176 Mich. 275 and analogous cases of our court cited in these two cases.

In *Ford Motor Co.* v. *Blair,* 259 Mich. 574, Mr. Justice Potter, speaking· for the court, recites the rule on the right to bring interpleader stated in *Lanning* v. *Stiles, supra,* and approved in *Ford Motor Co.* v. *Wayne Circuit Judge, supra,* as follows:

"To entitle a complainant to file a bill of interpleader the following essential facts must appear: (1) The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded; (2) all adverse claims or titles must be dependent or derived from a common source; (3) the complainant must not have nor claim any interest in the subject-matter; (4) complainant must have incurred no independent liability to either of the claimants."

Thereinafter, Mr. Justice Potter makes an analysis of the *Ford Motor Co.* v. *Wayne Circuit Judge Case* as follows: ·

"In that case it was pointed out that the lienors were not parties to the arbitration proceeding, which did not conclude them; they might assert liability beyond the fund arising from the award made; all adverse claims did not arise from a common source; and separate hearings might be required on separate bills to enforce distinct liens which were not in all cases on the same structures."

This elucidation, we think, distinguishes those cases cited by appellants from the one at bar.

Here we find: (1) The same thing or debt claimed by all parties against whom the relief is demanded, namely, the penalty contained in the surety bonds; (2) all adverse claims are dependent or derived from a common source, namely, the surety bonds, which were given for the benefit of all dealing with the principal, and in which bonds each claimant has an interest or claimed interest and to which all must

attach their right of action against the surety; (3) the plaintiff has no claim or interest in the subject-matter (this appears from the tender of the full penalty of the bonds into court to be used if necessary); (4) plaintiff has incurred no independent liability to either of claimants.

The plaintiff is here a mere stakeholder. It is ready and willing to distribute a fund to those to whom it legally belongs, and asks that it be permitted to pay such fund in accordance with a decree of a court of competent jurisdiction, so that equity may be done to all the claimants to such fund, and that plaintiff may be discharged from further liability. The plaintiff does not here stand to any of the other parties as a wrongdoer. There is no reason why it should be vexed by various suits against it, nor is there any reason why it should take the hazard of determining which of the claims it should pay, it being admitted that the sum of the claims far exceeds the penalties of the bonds.

In this type of proceeding we think that such excess of amount of claims above that of the fund available to be a necessary and vital part of the right of interpleader. While such fact did not appear from the bill filed, this defect was cured upon the filing of the replication. Should it appear on hearing, that such excess does not exist it would then be the duty of the trial court to dismiss the bill, unless it appeared, in justification of such pleading, that there were at least serious claims of such excess amount.

This requirement of excess claims appears to us to have several virtues. *First,* it prevents a surety from seeking equitable relief to prevent a single suit against it, or when it cannot allege and prove that there are serious claims against it which may exceed

the penal sum of the bond; *second,* it permits a *pro rata* distribution of the fund (as hereinafter set forth) when it appears to a court of equity that there are sufficient claims which exceed the penalty to make operative such equitable distribution; *third,* it preserves the right of a defrauded party to sue at law where such question of equitable distribution is not involved.

This last mentioned right of a defrauded party to sue at law is a substantial one. *Stone* v. *Indemnity Ins. Co. of North America,* 267 Mich. 580; *Green* v. *Fidelity & Casualty Co. of New York,* 261 Mich. 508. Nor do we hereby abrogate or detract from it.

Here the penalty of the respective bonds is the measure of the total liability of the surety company to the claimants. The claims appear to be in excess of such liability. A just and equitable payment from the bonds would be a distribution *pro rata* upon the amount of the several claims when properly proven. Equity will under such circumstances exercise its equitable powers to prevent inequitable distribution. *Guffanti* v. *National Surety Co., supra; Witter* v. *Massachusetts Bonding & Ins. Co., supra; National Surety Co.* v. *Graves,* 211 Ala. 533 (101 South. 190); *Illinois Surety Co.* v. *Mattone,* 138 App. Div. 173 (122 N. Y. Supp. 928); *Melton* v. *American Surety Co. of New York* (Tex. Civ. App.), 240 S. W. 574.

We are constrained to add that in permitting the procedure here intended and the remedy here sought, several things are required, namely, that the plaintiff forthwith pay the penal sum involved into court; that the plaintiff be barred from disputing or contesting the respective claims; that the trial court shall determine how the claims of the respective claimants may be severally proved, whether before the court itself, by reference, by submission to

proper courts of law for jury determination, or otherwise, considering in its equitable discretion, the character of the claims, the respective residence of the claimants and any other circumstances which might be pertinent thereto. After such claims are properly proven then such fund shall be distributed by the court. By so doing, not only will equity be accomplished, but all inherent and legal rights of the claimants will be preserved.

We affirm the order of the circuit court in chancery denying appellants' motion to dismiss and remand the cause to the circuit court for further proceedings but in accordance with this opinion. Costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. POTTER, J., did not sit.