*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SECURA INSURANCE COMPANY,

        Plaintiff-Appellee,

v

DEANNA STAMP, Personal Representative of the
ESTATE OF BRIAN STAMP,

        Defendant-Appellant,

and

JESSICA BEATTY, Personal Representative of the
ESTATE OF RHONDA LYNN MAHAFFY,

        Defendant-Appellee.

FOR PUBLICATION
May 19, 2022
9:00 a.m.

No. 357395
Sanilac Circuit Court
LC No. 20-038968-CZ

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

SHAPIRO, J.

This case concerns the distribution of interpleaded insurance funds when those funds are inadequate to pay each claimant in full. The trial court correctly relied on caselaw holding that a pro rata distribution is required under these circumstances, but then proceeded to split the insurance proceeds equally between the two estates—without holding a trial or making any factual findings—despite one of the estates claiming unequal losses. We reverse and remand for the trial court to order a pro rata distribution of the funds after each estate's losses are determined by a jury.

## I. BACKGROUND

Brian Stamp and Rhonda Mahaffy died as a result of the injuries they sustained in a motor vehicle-motorcycle crash in August 2019. The at-fault driver of the motor vehicle was uninsured. Stamp was a named insured under a commercial motor vehicle policy that his family had obtained through Secura Insurance Company, which provided uninsured motorist (UM) coverage of $1

-1-

million, subject to setoff for other applicable coverage. Mahaffy is also considered an "insured" under the Secura policy.

In February 2020, Stamp's estate filed a complaint against Secura in Sanilac Circuit Court.[1] It alleged that Secura was refusing to pay UM coverage as required by the policy and requested that the trial court determine and award damages as well as assess penalty interest under MCL 500.2006(4). Secura moved for summary disposition, arguing that its liability was limited to $500,000 because it was entitled to offset the $500,000 in insurance proceeds paid by Progressive Marathon Insurance Company.[2] On December 17, 2020, the trial court issued an opinion and order agreeing with Secura that proration of the two policies was required. The court also ruled that there was a question of fact as to the amount of damages suffered by Stamp's estate and, absent settlement, that the question would be determined by a jury because Secura had filed a demand for a jury trial.

A few days later, on December 22, 2020, Secura filed the present interpleader action against Stamp's and Mahaffy's estates. Secura alleged that there would likely be multiple lawsuits relating to the UM coverage with aggregate losses exceeding the now $500,000 limit on UM coverage. Upon a motion by Mahaffy's estate, the prior action was consolidated with the interpleader action.

Mahaffy's estate then moved the trial court to equally divide the $500,000 between the estates. Stamp's estate opposed equal distribution of the funds, essentially arguing that it had suffered more damages because decedent Stamp had a 14-year-old dependent son while decedent Mahaffy had no dependents. Stamp's estate also maintained that each estate's damages should be determined by a jury. After hearing oral argument, the trial court agreed with Mahaffy's estate that a jury trial was not appropriate and relied on *Moore v McDowell*, 54 Mich App 657; 221 NW2d 446 (1974), to conclude that the insurance proceeds should be distributed equally between the estates.[3] The trial court denied a motion for reconsideration and this appeal followed.[4]

## II. ANALYSIS

---

[1] LC case no. 20-38499-CK.

[2] At the time of the crash, Stamp also had UM coverage with Progressive. Progressive filed an interpleader action in the Lapeer Circuit Court, LC case no. 20-53780-CZ, and the trial court in that case ordered Progressive's UM benefits to be distributed equally between the two estates. Mahaffy's estate also received $100,000 in uninsured motorist benefits from Rhonda's own no-fault policy.

[3] The trial court allowed the case to move forward regarding whether Secura owed Stamp's estate penalty fees under MCL 500.2006.

[4] "This Court reviews de novo matters of equity." *Estate of Mullin v Duenas*, 296 Mich App 268, 271; 818 NW2d 465 (2012). Questions of law are also reviewed de novo. *Thomas v New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2002).

Stamp's estate argues that the trial court erred by dividing the $500,000 insurance proceeds equally without holding a jury trial or evidentiary hearing to determine each estate's losses. We agree.

Interpleader actions are equitable in nature, see *Krause v Hartford Accident & Indemnity Co*, 331 Mich 19, 22; 49 NW2d 41 (1951), and are governed by MCR 3.603, which provides that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." MCR 3.603(A)(1). The purpose of interpleader is to save a party from having to defend multiple suits seeking the same property or limited fund. See *Fidelity & Deposit Co of Maryland v Cody*, 278 Mich 435, 443; 270 NW 739 (1936).

Secura's interpleader action was appropriate under MCR 3.603 because it is undisputed that the estates' aggregate losses exceed the $500,000 limit on UM coverage. Accordingly, the trial court was authorized by MCR 3.603 to grant Secura various relief, including ordering Secura "discharged from liability as to property deposited or secured *before determining the rights of the claimants*." MCR 3.603(B)(3) (emphasis added). This appeal concerns *how* a trial court is to determine the rights of the claimants, a matter on which MCR 3.603 offers no guidance.

Stamp's estate argued that the trial court should hold a jury trial to determine the damages arising from each decedent's death and then distribute the $500,000 so that each estate received a proportionate share of the overall damages. The trial court declined this course of action because it concluded on the basis of *Moore*, 54 Mich App 657, that the $500,000 should be equally divided between the estates.

The question in *Moore* was whether 23 bus passengers injured in a crash should be paid out of the $20,000 interpleaded insurance funds on a pro rata basis, or if priority should be given to the claimants who had already obtained judgments against the uninsured motorist. See *id*. at 658-660. This Court held that a pro rata distribution was appropriate when the damage claims exceed the fund from which the claims are to be paid, relying in part on *Century Indemnity Co v Kofsky*, 115 Conn 193, 200; 161 A 101 (1932), for the following proposition:

> . . . . Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim. Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon equal footing, and will decree a pro rata distribution or payment. The plaintiff has submitted to the court in a proceeding in equity the question of its liability to pay to the various defendants the amounts due under the policy; justice requires that they share in equal proportions in the sums due under it on account of the particular kind of injuries suffered; and in the circumstances of this case that result can be accomplished without violating any legal principle. [*Id*. at 660-661 (quotation marks and citation omitted).]

On the basis of this and other authority, this Court remanded for the insurance funds to "be distributed pro rata among all claimants." *Id*. at 663.

Although not binding on us, we find persuasive *Moore*'s holding that inadequate insurance funds should be distributed pro rata to the claimants.[5]  Indeed, it is consistent with the Supreme Court's holding in *Fidelity & Deposit Co of Maryland*, 278 Mich at 443, that "[a] just and equitable payment from the bonds [when the claims on the bond were in excess of liability] would be a distribution pro rata upon the amount of the several claims when properly proven."  However, we conclude that the trial court misinterpreted *Moore* and the meaning of a pro rata distribution.

On the basis of the maxim that "equality is equity," Mahaffy's estate successfully argued before the trial court that the $500,000 funds should be equally divided between the estates.  But this maxim must be considered relative to the context in which it was used.  *Moore* did not hold that each claimant should receive the same share of the limited insurance funds regardless of the extent of their damages; rather, it held that when the claims exceed the funds, equity requires distribution on a pro rata basis.[6]  See *Moore*, 54 Mich App at 663.  Pro rata means "[p]roportionately; according to an exact rate, measure, or interest." *Black's Law Dictionary* (11th ed).  This definition of pro rata is consistent with Michigan caselaw.  See e.g., *Soup v Letllier*, 123 Mich 640, 644; 82 NW2d 523 (1900) ("From these findings of fact, the court below concluded that all the parties must share in the mortgage pro rata,—that is, in proportion to the value of the materials furnished by them, respectively.").  Accordingly, a pro rata distribution when there are limited funds means that the claimants will receive distributions in proportion to their claims.  See *Ballentine's Law Dictionary* (3rd ed) (defining "prorating claims" as "[a] distribution of assets to creditors in *proportion to the size of their respective claims* where there are insufficient assets for payments of all claims in full.") (emphasis added).[7]  If the underlying claims are equal, then the claimants will receive the same proportional shares.  But if the claims are unequal—as Stamp's estate asserts in this case—the proportional shares will differ.

This point was expressly made in *Sheehan v Liberty Mut Fire Ins Co*, 288 Ala 137; 258 So 2d 179 (1972).[8]  In that case, the insurer interpleaded funds for UM coverage when there were three claimants whose total claims exceeded the policy limits.  *Id.* at 139.  The trial court ordered that the funds be divided equally between the three claimants.  The Alabama Supreme Court reversed, stating that it did not understand the basis for that ruling "when each claimant sustained

---

[5] "[P]ublished opinions of this Court decided before November 1, 1990, are not strictly binding, MCR 7.215(J)(1), [but] they are nevertheless precedential, MCR 7.215(C)(2), and they are thus afforded significantly more deference than would be given to unpublished cases." *People v Spaulding*, 332 Mich App 638, 657 n 5; 957 NW2d 843 (2020).

[6] *Moore* did not discuss how the pro rata distribution was to be made in that case, although the procedural history of that case suggests that an arbitratror appointed by the trial court was to determine the amount of each claim.  See *Moore*, 54 Mich App at 659.

[7] In contrast, had *Moore* granted priority to the claimants who had already obtained judgments, those claimants would have received a distribution *greater* than their proportionate share because their claims would have been paid in full.

[8] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).  See also 48 CJS, Interpleader, § 45, p 151 n 9 (citing *Sheehan* with approval).

an [u]nequal loss." *Id*. at 143-144. The court was not aware of authority directly addressing this issue and relied in part on the passage from *Kofsky*, 115 Conn 193—quoted with approval in *Moore*—explaining that equity requires a pro rata distribution when a common fund is insufficient to pay all claims. See *id*. at 143-144. From this, the court concluded that an equitable proration in that case would require each claimant receiving a portion of the fund equal to the amount that their individual damages bore to the total damages. *Id*. at 144. See also 70 ALR 2d 416 ("Where several claims arising from an insured event have been joined in one suit against an insurer whose maximum liability under its policy is inadequate to pay in full the amounts deserved by the claimants, courts have held that the proceeds were to be distributed on a prorata basis *in accordance with the amount of damage suffered by each claimant*.") (emphasis added).

We find the reasoning of *Sheean* persuasive and in line with *Moore*. To achieve a pro rata distribution, each estate's share of the limited funds must be equal to the ratio of its damages to the total combined damaged suffered by the estates. Merely dividing a limited fund into equal shares when a claimant asserts unequal losses is not an equitable result. Because Stamp's estate maintains that its losses exceeds Mahaffy's estate, there was a material question of fact as to each estate's damages.

The question becomes whether a jury or the trial court should decide this matter as the trier of fact. Secura and Mahaffy's estate rely on *Curran v Williams*, 352 Mich 278; 89 NW2d 602 (1958), to argue that a jury trial is not appropriate. In that case, the interpleader action was brought to determine whether the seller or purchaser of real property was entitled to a $1,000 deposit after the purchaser failed to complete the sale. *Id*. at 280. The sellers then filed a cross-complaint in that action to recover their total damages. *Id*. at 281. The Supreme Court agreed with the sellers "[a]s to the general view of the powers of an equity court to hear and dispose of issues between parties once it has assumed jurisdiction," and proceeded to quote 30 Am Jur, Interpleader, § 25, p 232, for the following:

> "After it is determined that the plaintiff in interpleader has the right to bring the action and to compel the defendants or claimants to interplead, and after the plaintiff is discharged from liability, with his costs, upon bringing the money or thing in dispute into court, the litigation proceeds among the claimants or defendants. If the bill of interpleader is ripe for decision at the time of hearing, the court ordinarily will proceed at once to render a final decree settling the rights of all parties at once. On the other hand, if the case is not ripe for decision, the court, upon dismissing the plaintiff, will direct an action or an issue or a reference to a master, as may be best suited to the nature of the case. *As between the defendants compelled to interplead, recovery rests upon the strength of the claim of one, rather than upon the weakness of the other. The court, in determining the rights of the claimants, may do complete equity between them, and generally, see to it that no just right or privilege of trial is lost to either party as a result of having been compelled by bill of interpleader to litigate in a court of equity. However, inasmuch as the basis of an interpleader action is equitable, there is no absolute right to a trial by jury*." [*Id*. at 281-282 (emphasis added).]

But the Supreme Court went on to hold that the liquidated damages provision of the purchase agreement was enforceable, see *id*. at 286-287, and so there was no need to determine if a jury trial on the seller's total damage claim was appropriate.

Although the Supreme Court's discussion of this issue is arguably dicta,[9] we will assume for purposes of this appeal that *Curran* held that a claimant has no absolute right to a jury trial in an interpleader action. But the fact that Stamp's estate lacks an absolute right to a jury trial does not answer whether one should have permitted in this case. It bears emphasizing that *Curran* did not preclude jury trials between claimants in interpleader actions. To the extent the trial court had discretion to grant a jury trial, the court abused that discretion by resting its decision on a misinterpretation of *Moore*. See *Denton v Dep't Of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016) ("An error of law necessarily constitutes an abuse of discretion.").

Further, Secura and Mahaffy's estate overlook *Curran*'s guidance that, generally, a court should "see to it that no just right or privilege of trial is lost to either party as a result of having been compelled by bill of interpleader to litigate in a court of equity."[10] *Curran*, 352 Mich at 282 (quotation marks and citation omitted). In this case, Stamp's estate had a right to a jury trial in the earlier action, which essentially was a breach of contract action to recover under the insurance policy. That Secura demanded a jury trial on damages in that action only supports the conclusion that one should be held. And significantly, no persuasive argument has been offered for why a jury trial should not be held. The trial court stated that it could not "fathom having a jury trial where we are going to have heirs argue that Mr. Stamp's life was worth so much more than Ms. Mahaffy's . . . ." But juries regularly decide damages in wrongful death cases where there are

---

[9] "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." See *Auto-Owners Ins Co v All Star Lawn Specialists Plus, Inc*, 497 Mich 13, 21 n 15; 857 NW2d 520 (2014) (quotation marks and citation omitted).

[10] We note that there appears to be a growing consensus that interpleader actions should not deprive parties of a jury trial they would have otherwise been entitled to. As the United State Supreme Court explained in *Ross v Bernhard*, 396 US 531, 541 n 15; 90 S Ct 733; 24 L Ed 2d 729 (1970):

> Before merger interpleader actions lay only in equity, and there was no right to a jury even on issues that might, under other circumstances, have been tried to a jury. This view continued for some time after merger, but numerous courts and commentators have now come to the conclusion that the right to a jury should not turn on how the parties happen to be brought into court. [Citations omitted.]

One respected treatise has specifically concluded that "when the issues would be triable to a jury if they were litigated independently, as is true when an insurance company interpleads tort claimants whose damages exceed the policy limits, they should be triable to a jury as a matter of right . . . ." 7 Wright & Miller, Federal Practice & Procedure: Civil § 1718 (3d ed.).

multiple plaintiffs. We therefore do not view the trial court's concerns as a valid reason to deny a jury trial on damages that would have occurred absent Secura's interpleader action.[11]

### III. CONCLUSION

On remand, the trial court shall hold a jury trial to determine the damages arising from each decedent's death. The trial court will then order a pro rata distribution of the insurance funds consistent with this opinion. Stamp's estate may tax appellate costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Noah P. Hood

---

[11] Even if were to conclude that Stamp's estate was not entitled to a jury trial, an evidentiary hearing or bench trial would nonetheless be required. We are not convinced by the argument that such a hearing is not necessary because an interpleader action is equitable in nature. "Equity" is not a talisman that obviates the presentation of proofs and factual findings when necessary. Divorce proceedings are equitable in nature, *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997), but no one would suggest that a trial court could divide a marital estate in a contested case without receiving proofs and making findings.